UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ST. VINCENT RANDOLPH HOSPITAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:15-cv-00768-TWP-DML |
| ) | |
| SYLVIA M. BURWELL, Secretary of the United ) | |
| States Department of Health and Human Services, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on the parties' cross motions for summary judgment filed pursuant to Federal Rule of Civil Procedure 56 by Plaintiff St. Vincent Randolph Hospital, Inc., ("St. Vincent") (Filing No. 20), and by Defendant Sylvia Burwell, Secretary of the United States Department of Health and Human Services ("the Secretary") (Filing No. 23). St. Vincent asserts that the Secretary's final decision to deny its Medicare reimbursement request for interest expenses incurred during 2004 through 2008, was arbitrary, capricious, and unsupported by substantial evidence pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. St. Vincent filed for relief in this Court, requesting that the Court reverse the Secretary's decision and award reimbursement of interest expenses incurred during the 2004 through 2008 fiscal years. The parties each moved for summary judgment on the Complaint. For the following reasons, the Court **DENIES** St. Vincent's Motion for Summary Judgment and **GRANTS** the Secretary's Cross-Motion for Summary Judgment.

### I.   BACKGROUND

The following material facts upon which this case is based are undisputed.

A.      **The Medicare Act and Reimbursement Procedures**

Congress established the Medicare Program under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, to provide subsidized health insurance primarily for elderly and disabled individuals. *Michael Reese Hosp. and Med. Ctr. v. Thompson*, 427 F.3d 436, 438 (7th Cir. 2005). Medicare "is administered, in part, through contractual arrangements with providers of health care services." *Adventist Living Ctrs. v. Bowen*, 881 F.2d 1417, 1419 (7th Cir. 1989) (citing 42 U.S.C. § 1395cc). Under the Medicare Act, health care providers are entitled to reimbursement for the "reasonable costs" of medical services they provide to Medicare beneficiaries. 42 U.S.C. § 1395f(b)(1); 42 C.F.R. § 413.9(a). These reimbursements are subject to certain limitations created by the Secretary. 42 U.S.C. § 1395x(v)(1)(A).

The Secretary, pursuant to her authority, promulgated "regulations establishing the methods for determining reasonable cost reimbursement." *Abraham Lincoln Mem'l Hosp. v. Sebelius*, 698 F.3d 536, 542 (7th Cir. 2012) (citing *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 92 (1995)); *see also* 42 U.S.C. § 1395x(v)(1)(A). "Reasonable costs" are defined as, the cost actually incurred that are "necessary and proper in furnishing [Medicare] services." *Id*; 42 C.F.R. § 413.9(a). "Necessary and proper" is defined as "costs that are appropriate and helpful in developing and maintaining the operation of patient care facilities and activities. They are usually costs that are common and accepted occurrences in the field of the provider's activity." 42 C.F.R. § 413.9(b)(2). In addition to publishing regulations, the Secretary issues the Provider Reimbursement Manual ("PRM") to give guidance in interpreting the regulations. *Abraham Lincoln Mem'l Hosp. v. Sebelius*, 698 at 542, (citing *Mem'l Hosp. of Carbondale v. Heckler*, 760 F.2d 771, 772 (7th Cir. 1985). The PRM "is best viewed as an administrative interpretation of regulations and corresponding statutes, and as such it is entitled to 'considerable deference' as a

2

general matter." *Daviess Cty. Hosp. v. Bowen*, 811 F.2d 338, 345 (7th Cir. 1987) (citing *Bedford Med. Ctr. v. Heckler*, 766 F.2d 321, 323 (7th Cir. 1985).

Under the PRM, interest reimbursements are allowable under the Medicare program if they are: "1) supported by evidence of an agreement that the funds were borrowed and that payment of interest and repayment of the funds are required; 2) identified in the party's accounting records; 3) related to the reporting period in which the costs were incurred; and 4) necessary and proper for the operation, maintenance, or acquisition of the party's facilities". PRM-1 § 202.1, CMS Pub. No. 15-1. The PRM clarifies that only necessary and proper interest expenses are reimbursable under the Medicare program. *Id.* at § 202.2. An interest expense is "necessary" if it is: 1) incurred on a loan that is made to satisfy a financial need, 2) for a purpose related to patient care, and 3) incurred on a loan that is reduced by investment income. *Id.* "Proper" is defined as "interest incurred at a rate not in excess of what a prudent borrower would have had to pay in an arm's-length transaction in the money market when the loan was made." *Id.* at § 202.3. The PRM also makes clear that an interest is proper only if it is "paid to a lender not related to [the party] through common ownership or control. *Id*.

**B.     Reimbursement Procedures**

To obtain reimbursement, health care providers who participate in the Medicare program must "maintain sufficient financial records" and submit an annual "cost report" detailing the cost of services and the amount of reimbursement a participating provider believes it is due. 42 C.F.R. §§ 413.20(a), (b), 413.24. The cost reports are then reviewed by a fiscal intermediary, who determines the amount of payments providers are entitled to and issues a notice of program reimbursement ("NPR"). 42 C.F.R. § 405.1803. A provider has 180 days after receiving the NPR to file an appeal with the Provider Reimbursement Review Board ("PRRB") if the provider is

unsatisfied with the fiscal intermediary's determination. 42 U.S.C. § 1395oo(a); 42 C.F.R. §§ 405.1835. The PRRB conducts a hearing on the issues presented and has the power to affirm, modify, or reverse the decision of a fiscal intermediary based upon the record made at the hearing. 42 U.S.C. § 1395oo(d). A PRRB's decision may then be reversed, affirmed, or modified by the Secretary. 42 U.S.C. § 1395oo(f)(1). Providers who are unsatisfied with the Secretary's or the PRRB's decision may obtain judicial review in federal district court. *Id.*

C.     **Factual and Procedural Background**

St. Vincent Randolph is a critical access hospital located in Winchester, Indiana. (Filing No. 24 at 13.) The hospital was created in 2000 when its parent company, St. Vincent Health, acquired Randolph County Hospital. *Id.* Randolph County Hospital operated in a building that was 80 years old, and needed replacement. (Filing No. 21 at 4.) Shortly after the acquisition of Randolph County Hospital, construction of a new hospital, now known as St. Vincent Randolph, began. *Id.* The costs of constructing St. Vincent Randolph amounted to approximately $15.5 million. (Filing No. 21 at 4.) St. Vincent Randolph borrowed $15,281,928.18 for the construction of its hospital from its sister hospital, St. Vincent Hospital and Health Care Center, Inc. ("St. Vincent Indianapolis").[1] (Filing No. 24 at 13.) This loan was documented through board resolutions and intercompany journal entries. (Filing No. 25 at 5.) However, a formal loan agreement was not drafted at that time and the only documentation as to the terms of the 2002 loan was an Amortization table dated October 9, 2002. (Filing No. 24 at 14.) Construction of St. Vincent Randolph was completed by November 2001. (Filing No. 24 at 13.) Soon thereafter, Ministries of Ascension Health ("Ascension Health"), the largest Catholic Health care system in

---

[1] This loan between St. Vincent Randolph and St. Vincent Indianapolis is considered a "related-party loan" and, absent being applicable under the Mother House exception, interest expenses incurred on this loan are not reimbursable under the Medicare program. *See* PRM-1 § 202.3, CMS Pub. No. 15-1.

4

the United States, acquired St. Vincent Health and its subsidiary hospitals, including the new St. Vincent Randolph.  *Id.*

On July 1, 2003, St. Vincent Randolph became a member of the Ascension Health obligated group.  ([Filing No. 21 at 5](#).)  It was also the first day of St. Vincent Randolph's 2004 fiscal year.  *Id*.  As a member of the Ascension Health group, St. Vincent Randolph participated in a bond financing program where Ascension Health agreed to pay the costs associated with St. Vincent Randolph's development and construction.  ([Filing No. 24 at 14](#).)  In exchange for the bond, St. Vincent Randolph agreed to pay interest on the funds it received from Ascension Health.  *Id.*  St. Vincent Randolph incurred a $15,568,979.88 debt through the Ascension Health group.  *Id.* at 15.  The bond agreement was documented by formal bond documents provided by Ascension Health.  ([Filing No. 25 at 5](#).)  St. Vincent Randolph states that it used the funds it received from Ascension Health to repay, through an intercompany transfer, the related-party loan it received from St. Vincent Indianapolis.  ([Filing No. 21 at 5](#).)  St. Vincent Randolph then assumed its proportionate share of responsibility for the bond obligation undertaken by Ascension Health.  *Id.*

Thereafter, St. Vincent Randolph filed a cost report for Medicare reimbursement of the interest it paid during fiscal years 2002 and 2004 through 2008.  ([Filing No. 24 at 15](#).)  The 2002 interest expense regarded the related-party loan St. Vincent Randolph received from St. Vincent Indianapolis.  *Id.*  The 2004 through 2008 interest expense regarded interest paid on the bond received from Ascension Health.  ([Filing No. 21 at 5](#).)  As noted above, in order to receive a reimbursement under the Medicare program, certain requirements must be met, including proper documentation.  42 C.F.R. §§ 413.20(a), (b), 413.24.  The fiscal intermediary denied St. Vincent's request for reimbursements, asserting that the interest expense for the 2002 loan was not allowed because the loan was from a related party, as well as insufficiently documented.  ([Filing No. 24 at

5

15.) St. Vincent Randolph withdrew its 2002 reimbursement request and appealed to the Provider Reimbursement Review Board ("PRRB") regarding the 2004 through 2008 interest expense. (Filing No. 21 at 8.)

On February 11, 2014, a hearing was held before the PRRB. (Filing No. 24 at 16.) At this time, the fiscal intermediary stated that the 2004 through 2008 reimbursement request was denied due to insufficient documentation of the initial loan between St. Vincent Randolph and St. Vincent Indianapolis. (Filing No. 21 at 5.) The fiscal intermediary questioned whether the interim loan from St. Vincent Indianapolis to St. Vincent Randolph was repaid at the time St. Vincent Randolph became part of the Ascension Health obligated group in July 2003. *Id*. St. Vincent Randolph produced journal entries, general ledger excerpts, excerpts from the Centralized Debt Management System maintained by Ascension Health, as well as federal tax returns for the 2002-2004 fiscal years to evidence that St. Vincent Randolph was indebted to St. Vincent Indianapolis and repaid that loan prior to the 2004 fiscal year. *Id.* The PRRB concluded that the fiscal intermediary's disallowance of St. Vincent's interest expense for the periods of 2004 through 2008 was improper. The PRRB determined that St. Vincent Randolph properly claimed interest expense on its Medicare cost report for the fiscal years of 2004 through 2008, reasoning that:

> [t]he regulations governing Medicare reasonable cost reimbursement, including those at 42 C.F.R. § 413.153(c), neither prohibit nor preclude a provider from changing the source of its borrowed funds. Further, the Board finds that these regulations do not prohibit the curing of a nonallowable related-party interest expense through refinancing of the loan with a third party lender or Motherhouse. Therefore the Board concludes that the loan between St. Vincent [] and Ascension Health qualifies under the "Motherhouse[2]" exception at 42 C.F.R. § 413.153(c)(2).

---

[2] The PRM explains that under the Mother House exception providers owned and operated by members of religious orders often obtain funds through loans from the Mother House or Governing Body of the religious order. Where there is a contractual agreement for the payment of interest, and for the eventual repayment of the loan, the interest expense is allowable as cost provided the interest is applicable to the period after the certification of the institution as a provider. Interest expense incurred during a reporting period must be paid within the succeeding reporting period. PRM-1 § 220, CMS Pub. No. 15-1.

A.R. at 40. Then, on April 1, 2015, a Center for Medicare & Medicaid Services ("CMS") administrator, acting on behalf of the Secretary, reversed the PRRB's decision, asserting that

> *the documentation submitted by [St. Vincent Randolph] was insufficient to establish that the loans were necessary and proper and related to patient care.* [St. Vincent Randolph] did not produce a signed loan contract for the first loan between related providers. The only evidence of the terms of the loans were amortization tables. Thus, the initial loan between [St. Vincent Indianapolis] and St. Vincent [Randolph] was not "proper" according to the regulations or the PRM. Additionally, [St. Vincent Randolph] did not submit sufficient evidence to establish that the initial loan was paid off by the bonds, nor did they provide sufficient evidence as to what interest payments were attributable to the initial loan.

A.R. at 13. On May 14, 2015, St. Vincent Randolph timely filed its request for judicial review of the Secretary's decision with this Court. (Filing No. 1.) St. Vincent Randolph requests declaratory relief under the APA that the Secretary's decision was arbitrary, capricious, an abuse of discretion, and not in accordance with law.

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only where there exists "no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Summary judgment is appropriate in cases where the court's task is to review an administrative record and apply legal standards to that record. *See Hunger v. Leininger*, 15 F.3d 664, 669 (7th Cir. 1994).

Under 42 U.S.C. §1395oo(f)(1), a final decision by the Provider Reimbursement Review Board ("PRRB") is subject to review under the standards prescribed by the Administrative Procedure Act ("APA"), 5 U.S.C. §§701-706. The parties agree that the APA applies in this case. In the context of administrative actions and decisions, the APA requires a plaintiff to exhaust all available administrative remedies before initiating an action in federal court. 5 U.S.C. § 704. Under the APA, a district court may set aside a final agency action if it is arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A); *see also Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 496–97 (2004). A district court also may set aside a final agency action if it is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; is without observance of procedure required by law; or is unsupported by substantial evidence. 5 U.S.C. § 706(2).

The court's review focuses on whether "the agency examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Indiana Forest Alliance, Inc. v. United States Forest Serv.*, 325 F.3d 851, 859 (7th Cir. 2003) (citation and quotation marks omitted). On review, the district court does not reweigh the evidence that was presented to the agency, and thus, the review is narrow and highly deferential. *Israel v. USDA*, 282 F.3d 521, 526 (7th Cir. 2002). "[E]ven if we disagree with the agency's action, we must uphold the action if the agency considered all of the relevant factors and we can discern a rational basis for the agency's choice." *Id.* Further, the district court is not empowered to substitute its judgment for that of the agency but rather ensures that there is a rational connection between the facts found and the choice made by the agency. *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974). "Even when an agency explains its decision with less than ideal clarity, a reviewing court will not upset the decision on that account if the agency's path may reasonably be discerned." *Alaska Dep't of Envtl. Conservation*, 540 U.S. at 497 (citation and quotation marks omitted).

Where resolution of the dispute involves primarily issues of fact requiring a high level of technical expertise, the district court gives substantial deference to the federal agencies. *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 377 (1989). The district court also gives

"substantial deference to an agency's interpretation of its own regulations." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994).

A plaintiff challenging an agency's action bears the burden of demonstrating that the agency's action fails under the APA. *Sierra Club v. Marita*, 46 F.3d 606, 619 (7th Cir. 1995). Despite the high hurdle a plaintiff faces and the substantial deference given to federal agencies, "deference does not mean obeisance. Deference will not shield an agency action from a thorough, probing, in-depth review." *Id.* (citation and quotation marks omitted). "[N]arrow and deferential review does not equate with no review at all. The inquiry still must be thorough and probing." *Bagdonas v. Dep't of Treasury*, 93 F.3d 422, 426 (7th Cir. 1996).

An agency's decision is arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence, or is implausible. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

### III.  DISCUSSION

**A.  Review of Secretary's Decision**

St. Vincent Randolph argues that the Secretary's decision to deny its reimbursement claim was arbitrary, capricious, an abuse of discretion, and not in accordance with law. The Secretary states two reasons for denying St. Vincent's claim for reimbursement. First, the Secretary contends that St. Vincent's claim for interest expense for fiscal years 2004 through 2008, which derived from the Ascension Health refinance bond, is unallowable because the initial 2002 loan was improperly documented. The Secretary also alleges that St. Vincent Randolph failed to provide sufficient documentation to demonstrate that the 2003 bond from Ascension Health appropriately refinanced the 2002 loan. The Court will address each contention in turn.

9

1. **The 2002 Loan Documentation**

"No [Medicare reimbursement] payments shall be made to any provider unless it has furnished such information as the Secretary may request in order to determine the amounts due [to the provider]." *Daviess Cty. Hosp. v. Bowen*, 811 F.2d 338 (7th Cir. 1987) (quoting 42 U.S.C. § 1395g(a)).

> To support the existence of a loan, [a party must] have available a signed copy of the loan contract which contains the pertinent terms of the loan such as amount, rate of interest, method of payment, due date, etc. Where the lender does not customarily furnish a copy of the loan contract, correspondence from the lender stating the pertinent terms of the loan such as amount, rate of interest, method of payment, due date, etc., is acceptable.

*Id.* To be allowable under the Medicare program, interests must be supported by evidence of "an agreement that the funds were borrowed and that payment of interest and repayment of the funds are required." PRM-1 § 202.1, CMS Pub. No. 15-1. The interest must also be "identified in the party's accounting records." *Id.* St. Vincent Randolph does not deny that the initial 2002 related-party loan was evidenced only through board resolutions and intercompany journal entries. Nor does St. Vincent Randolph dispute that the 2002 loan was not a written and signed contract or agreement with all of the essential terms. For these reasons, and more, reimbursement for interest expense incurred from the 2002 loan was denied by the Secretary.

However, St. Vincent Randolph's appeal relates only to interest expense incurred during the 2004 through 2008 fiscal years that derive from the 2003 bond received from Ascension Health. It is undisputed that St. Vincent Randolph withdrew its claim for reimbursement under the 2002 loan. The Secretary argues that despite St. Vincent withdrawing its claim for reimbursement under the 2002 loan, the interest expense from Ascension Health's refinance bond, which the Secretary does not dispute was properly documented, is not reimbursable. The Secretary contends that the refinance bond stems from the improperly documented 2002 loan and is therefore "tainted" and

10

not reimbursable. (Filing No. 24 at 23.) St. Vincent Randolph argues that the Secretary failed to present statutory or regulatory support for its contention that in order for St. Vincent's claims for interest expense for the 2003 refinance bond to be allowable, the interest expense on the original 2002 loan must be allowable. St. Vincent Randolph further alleges that the original 2002 related-party loan and the 2003 refinancing bond are two distinct transactions. It asserts that the interest expense incurred under the 2002 loan was claimed under PRM §210 regarding "notes"[3], while the interest expense incurred under the Ascension Health bond was claimed pursuant to PRM § 212 dealing with "bonds".[4] As such, St. Vincent Randolph contends that the original 2002 loan does not affect reimbursement of interest expense incurred from the subsequent 2003 bond.

St. Vincent Randolph relies on *In-Home Health, Inc. v. Shalala*, No. 3-95-985, 1996 WL 393653 (D. Minn. May 30, 1996), when arguing that interest expenses that are not allowable under Medicare may be cured through a separate transaction to make the interest expense reimbursable. Medicare regulations contain "no prohibition to preclude a provider from changing the source of its borrowed funds, nor any regulation that requires interest expense on refinanced related party loans to remain tainted by [a] previous financial arrangement." *In-Home Health, Inc.,* 1996 WL 393653 at *8. The Secretary argues that St. Vincent's reliance on *In-Home Health, Inc.* is misplaced because the issue before the Court is solely an issue of documentation, and not whether St. Vincent Randolph qualified under the Mother House exception. The Secretary responded that

---

[3] A note is the contractual evidence given by a borrower to a lender that funds have been borrowed and which states the terms for repayment. Interest on notes is allowable as a cost in accordance with the terms of the note. PRM-1 § 210, CMS Pub. No. 15-1.

[4] A bond is an instrument used by both corporations and government entities to borrow funds, usually for long-term capital requirements. A bond is evidence of a liability and bondholders are assured of repayment at some future dates. The terms of the bond are stated in the bond indenture…. Interest on bonds is an allowable cost in accordance with the terms of the bond indenture, to the extent that the interest relates to bond proceeds used either to acquire assets for use in patient care activities or to provide funds for operations related to patient care. PRM-1 § 212, CMS Pub. No. 15-1.

even if the 2003 refinance bond is a separate and distinct transaction, it does not negate the fact that the interest expense claimed on the refinance loan originates from the original 2002 loan.

In the Court's view, the Secretary failed to consider the substance of St. Vincent's argument that not only are the two loans separate and distinct transactions, but that the Medicare plan or the PRM does not prohibit St. Vincent Randolph from achieving a reimbursement for a properly documented refinance bond. The Secretary presents no statutory or regulatory support for her contention that St. Vincent's original 2002 loan was tainted due to insufficient documentation and, therefore, St. Vincent Randolph could not properly claim reimbursement for interest expense incurred from the 2003 refinance bond. Rather than address St. Vincent's contention, the Secretary dismisses it in reliance on the Medicare statute allowing the Secretary to deny reimbursements based on inadequate documentation. Although the Court gives "substantial deference to an agency's interpretation of its own regulations," the denial of a sufficiently documented bond is not in accordance with the Secretary's PRM or Medicare law. Accordingly, the Court finds the Secretary's denial of reimbursement for this reason is not in accordance with law.

## 2. **Appropriate Refinance Documents**

Next, the Secretary asserts that St. Vincent Randolph failed to provide sufficient documentation to demonstrate that the 2003 bond from Ascension Health was incurred to refinance the 2002 loan. To obtain reimbursement under the Medicare program, health care providers who participate in the program must "maintain sufficient financial records." 42 C.F.R. §§ 413.20(a), (b), 413.24. The Secretary specifically challenged whether journal and general ledger entries submitted by St. Vincent Randolph were sufficient to establish that its loan obligations to St. Vincent Indianapolis were paid with the 2003 bond. In response, St. Vincent Randolph supplied

additional documents to the Secretary. In addition to the journal entries and general ledger excerpts, St. Vincent Randolph produced excerpts from the Centralized Debt Management System maintained by Ascension Health, as well as federal tax returns for the 2002 through 2004 fiscal years. St. Vincent Randolph argues that the additional documentation establishes that the 2002 debt was paid off by the $15,568,979.88 bond it received from Ascension Health. St. Vincent Randolph contends that its Federal tax returns for 2002 through 2004 fiscal years, along with St. Vincent Indianapolis' tax returns for the same years, eliminate any doubt about repayment of the initial 2002 loan. St. Vincent Randolph explains that its tax returns for fiscal year 2004 show that at the beginning of the year it owed St. Vincent Indianapolis $16, 675,856; however, at the end of the fiscal year St. Vincent Randolph owed only $1,279,315. This return therefore shows that St. Vincent Randolph paid St. Vincent Indianapolis $15,396,541. St. Vincent Randolph contends that the amount paid represents the remaining principal balance for the 2002 loan. (Filing No. 25 at 13.)

In response, the Secretary argues that the tax documents are insufficient because the documents produced by St. Vincent Randolph do not specifically state or certify that the funds received from the 2003 bond satisfied the initial 2002 debt that was incurred for the construction and operation of its hospital. Moreover, the Secretary contends that only necessary and proper interest expenses are reimbursable under the Medicare program. PRM-1 § 202.2, CMS Pub. No. 15-1. Interest expenses are necessary and proper if "they are incurred for the operation, maintenance, or acquisition of [a provider's] facilities." *Id*. at § 202.1. The interest must be "for a purpose related to patient care." *Id.* at § 202.2. Without certification that the 2003 bond was used to pay the 2002 construction loan, the Secretary argues that St. Vincent Randolph cannot establish that interest expense incurred from the 2003 bond was necessary and proper and related

13

to patient care. Under the APA, a district court may set aside a final agency action if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). The Secretary has provided a reasonable explanation for her determination. "Upon judicial review of an agency decision, the Secretary is considered the fact-finder and deference is given to the Secretary's factual findings." *St. Mary of Nazareth Hosp. v. Ctr. Shalala*, 96 F. Supp. 2d 773, 776 (N.D. Ill. 2000). This Court cannot say that the Secretary's findings are indicative of an arbitrary and capricious decision, nor can it find the decision unsupported by substantial evidence. Additionally, the decision is in accordance with Medicare law. Accordingly, summary judgment in favor of the Secretary is appropriate.

## IV. CONCLUSION

Although the Secretary's determination may be harsh, her decision is entitled to substantial deference and the Court is not allowed to reweigh the evidence or substitute its own judgment for that of the Secretary. For the aforementioned reasons, the Court **GRANTS** the Secretary's Cross-Motion for Summary Judgment ([Filing No. 23](Filing No. 23)), and **DENIES** St. Vincent's Motion for Summary Judgment ([Filing No. 20](Filing No. 20)).

**SO ORDERED.**

Date: 9/26/2016

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Nolan Kent Smith
HALL, RENDER, KILLIAN, HEATH & LYMAN, PC
ksmith@hallrender.com

Jill Z. Julian
UNITED STATES ATTORNEY'S OFFICE
jill.julian@usdoj.gov